## HOOVER COMPANY *v.* COE, COMMISSIONER OF PATENTS.

No. 486.   Argued March 5, 1945.—Decided April 30, 1945.

*Messrs. William D. Sellers* and *Richard R. Fitzsim-
mons,* with whom *Mr. William S. Hodges* was on the brief,
for petitioner.

*Mr. T. Hayward Brown* argued the cause, and *Solicitor
General Fahy, Assistant Attorney General Shea, Messrs.
Robert L. Stern, Joseph B. Goldman* and *Joseph Hough-
ton* were on the brief, for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The question presented is whether a District Court has
jurisdiction of a suit under R. S. 4915[1] to review the refusal
of a claim for patent as not reading on the application.
The court below answered in the negative.

The respondent confesses error. The language of the
Act, its legislative history, administrative practice, and
judicial construction, constrain us to hold that the Dis-
trict Court had jurisdiction of the suit and that the Court
of Appeals should have reviewed its decision upon the
merits.

January 10, 1941, the petitioner's assignor filed applica-
tion for a reissue of a patent granted November 7, 1939,
on an original application of August 8, 1936. The alleged
invention is for improvements in a refrigerating system.
A number of claims included in the application for reissue
were copied, or substantially copied, from several later
patents, in order to provoke interferences therewith and
a contest as to priority of invention.

The Primary Examiner finally rejected four of the
claims, stating that they were rejected "as not reading on
applicant's disclosure." The Board of Appeals of the Pat-

---

[1] 35 U. S. C. § 63.

ent Office affirmed the Examiner's decision. The petitioner then brought suit against the Commissioner of Patents under R. S. 4915 in the United States District Court for the District of Columbia, to compel him to allow the four claims, to the end that interference proceedings might be instituted. The case was heard on the Patent Office record and additional evidence. The court entered findings of fact and conclusions of law and dismissed the complaint on the ground that the claims did not read on, that is, did not accurately describe, the disclosure in the application.

On appeal the court below on its own motion raised the question "whether [R. S. 4915] confers jurisdiction on the District Court to enter a decree which does not determine the right of the applicant to receive a patent but which instead directs the examiner to allow claims for the purpose of provoking subsequent interference proceedings." The parties were heard upon this question and the court decided that the District Court lacked jurisdiction of the suit, and on that ground affirmed its judgment of dismissal.[2]

R. S. 4915 is in part:

"Whenever a patent on application is refused by the Board of Appeals or whenever any applicant is dissatisfied with the decision of the board of interference examiners, the applicant, unless appeal has been taken to the United States Court of Customs and Patent Appeals, and such appeal is pending or has been decided, in which case no action may be brought under this section, may have remedy by bill in equity, if filed within six months after such refusal or decision; and the court having cognizance thereof, on notice to adverse parties and other due proceedings had, may adjudge that such applicant is entitled, according to law, to receive a patent for his invention, as specified in his claim or for any part thereof, as the facts

---

[2] 144 F. 2d 514.

in the case may appear. And such adjudication, if it be in favor of the right of the applicant, shall authorize the commissioner to issue such patent on the applicant filing in the Patent Office a copy of the adjudication and otherwise complying with the requirements of law. In all cases where there is no opposing party a copy of the bill shall be served on the commissioner; and all the expenses of the proceedings shall be paid by the applicant, whether the final decision is in his favor or not."

The court below held that in conformity to the general rule, a court of equity ought not to afford piecemeal relief pending completion of the administrative process, and consequently ought not to entertain a suit under the statute unless its adjudication would conclude all possible questions as to the right to a patent.

1. On its face the statute confers the right to sue "Whenever a patent on application is refused by the Board of Appeals." The patent applied for (that is, the claims in question) was finally refused by the Board of Appeals. No appeal was taken to the United States Court of Customs and Patent Appeals, and petitioner filed its bill within the time limited in the section.

Two matters may be noted respecting R. S. 4915. These are the denial of jurisdiction if appeal has been taken to the United States Court of Customs and Patent Appeals and the statement that adjudication in favor of the applicant shall authorize the Commissioner to issue a patent. These provisions require reference to R. S. 4911, as amended. That section provides:

"If any applicant is dissatisfied with the decision of the board of appeals, he may appeal to the United States Court of Customs and Patent Appeals, in which case he waives his right to proceed under section 63 [R. S. 4915] of this title. If any party to an interference is dissatisfied with the decision of the board of interference examiners, he may appeal to the United States Court of Customs and

Patent Appeals: *Provided,* That such appeal shall be dismissed if any adverse party to such interference shall, within twenty days after the appellant shall have filed notice of appeal according to section 60 of this title, file notice with the Commissioner of Patents that he elects to have all further proceedings conducted as provided in Section 63 [R. S. 4915]. Thereupon the appellant shall have thirty days thereafter within which to file a bill in equity under said section 63 [R. S. 4915], in default of which the decisions appealed from shall govern the further proceedings in the case."

It is evident that alternative rights of review are accorded an applicant,—one by appeal to the United States Court of Customs and Patent Appeals, the other by bill in equity filed in one of the federal district courts. In the first the hearing is summary and solely on the record made in the Patent Office; [3] in the other a formal trial is afforded on proof which may include evidence not presented in the Patent Office.[4] Every party adversely affected by a ruling on the merits may, if he so elect, proceed by bill rather than by appeal. In the one case the adjudication in equity authorizes issue of a patent on the applicant's "otherwise complying with the requirements of law." In the other the decision "shall govern the further proceedings in the case" in the Patent Office.[5]

The question is whether the differences in the character of the proceedings and the statutory effect of decision or adjudication require a holding that as to all decisions on the merits adverse to the applicant, other than the final action as to the issue of a patent, the applicant must obtain review by appeal to the Court of Customs and Patent Appeals, and can proceed by bill under R. S. 4915 only when every step requisite to issue has been taken. If so,

---

[3] See R. S. 4914, 35 U. S. C. § 62.

[4] *Butterworth* v. *Hoe,* 112 U. S. 50, 61.

[5] R. S. 4911, *supra.*

the language of R. S. 4915 is ill chosen. "Whenever a patent on application is refused" states precisely this case. The petitioner's application was refused. "Whenever any applicant is dissatisfied with the decision of the board of interference examiners" states a case where the examiner's decision may be only one of a series of rulings in the Patent Office prior to issue of a patent. It can hardly be that these phrases have no effect and are to be read as "Whenever, after all administrative steps are complete and a patent is about to issue, any person aggrieved may have remedy by bill in equity." If that be the correct construction, one finally denied a patent could not resort to the specified remedy, since, even if his contention were sustained, he might thereafter have to leap the hurdles in the Patent Office of interferences, later references, and other obstacles to patentability.

On the face of the statutes the applicant is given alternative remedies resulting in the same sort of relief so far as concerns the further prosecution of the application in the Patent Office.

2. The legislative history confirms the view that Congress so intended.

That history cannot be stated briefly. It has its origin in the Patent Act of 1836 [6] which afforded an applicant aggrieved by a ruling of the Commissioner an appeal to a board of examiners.[7] By a later section it was provided that "whenever a patent on application shall have been refused on an adverse decision of a board of examiners, on the ground that the patent applied for would interfere with an unexpired patent," the applicant might have remedy by bill in equity; and the court might adjudge the applicant entitled to a patent, according to his claim or any part of it. Adjudication favorable to the applicant was to "authorize the Commissioner to issue such patent" on the applicant's filing a copy of the adjudication "and

[6] 5 Stat. 117.
[7] § 7, 5 Stat. 119–120.

otherwise complying with the requisitions of this act."[8] It will be noted that a bill might be filed under this statute only where the rejection of a claim was for interference with an outstanding patent. By the Act of March 3, 1837,[9] the same remedy was afforded an applicant for patent for an improvement or for "correction and re-issue."

By the Act of March 3, 1839,[10] the same remedy was extended "to all cases where patents are refused for any reason whatever, either by the Commissioner of Patents or by the chief justice of the District of Columbia, upon appeals from the decision of said Commissioner," as well as where the refusal was based on asserted interference. The reason for adding the phrase concerning the decision of the Chief Justice was that, by § 11[11] of the same Act, a summary appeal on the Patent Office record to this judicial officer was substituted for the former appeal to a board of examiners given by the Act of 1836.[12]

Thus a District Court might set aside, on bill filed, any ruling refusing a patent, either on interference or otherwise, whether the ruling were that of the Patent Office or of a judge of the Circuit Court of the District of Columbia on appeal from the Patent Office decision.

The Act of July 8, 1870,[13] amended, revised, and consolidated existing law. In § 48[14] it enacted that in *ex parte* cases an applicant for patent or reissue whose claims had been twice rejected might appeal to the Supreme Court of the District of Columbia. The hearing was to be summary, to be on the office record, and the decision

---

[8] § 16, 5 Stat. 123.

[9] 5 Stat. 191.

[10] § 10, 5 Stat. 354.

[11] 5 Stat. 354.

[12] By the Act of August 30, 1852, 10 Stat. 75, such summary appeal might be heard by any judge of the Circuit Court of the District of Columbia.

[13] 16 Stat. 198.

[14] 16 Stat. 205.

was "to govern the further proceedings in the case."[15] In § 52 it provided that whenever a patent on application "is refused, for any reason whatever," either by the Commissioner or by the Supreme Court of the District upon appeal, the remedy by bill in equity should be available. The adjudication was to authorize the issue of a patent on the applicant's filing a copy in the Patent Office "and otherwise complying with the requisitions of law." This statute was construed to require an appeal to the District Supreme Court as a condition precedent to the maintenance of a bill in equity.[16]

The provisions of the Act of 1870 were codified in the Revised Statutes of 1873.[17] In the process the words "for any reason whatever" were deleted from § 52, which became R. S. 4915. The omission was evidently because the words were surplusage, since the purpose of the revisers was not "to attempt any change whatever in the existing law" except "mere changes of phraseology not affecting the meaning of the law."[18]

By the Act of February 9, 1893[19] the Court of Appeals for the District of Columbia was created and jurisdiction of summary appeals from Patent Office rulings was transferred to that court. Thus the remedy by bill in equity was now to be pursued in a District Court only after an appeal to the Court of Appeals of the District had resulted adversely to the applicant; and an adjudication in the equity suit was subjected to review on appeal.

So matters stood until the passage of the Act of March 2, 1927.[20] In the hearings on the bill which became the statute, it was proposed that Congress eliminate either the

---

[15] § 50, 16 Stat. 205.

[16] *Kirk* v. *Commissioner of Patents* (1886), C. D. 440; *Fekete* v. *Robertson,* 17 F. 2d 335; *Cooper* v. *Robertson,* 38 F. 2d 852.

[17] The relevant sections are 4911–15 inclusive.

[18] 2 Cong. Rec. 646.

[19] 27 Stat. 434, 436.

[20] 44 Stat. 1335.

appeal or the bill in equity, some interested parties suggesting abolition of the one remedy, others advocating dropping the other. Congress decided not to do away with either, but to allow an applicant "to have the decision of the Patent Office reviewed either by the court of appeals or by filing a bill in equity, but not both." [21] It is evident that no alteration in respect of the rulings which could be reviewed was intended; but the number of possible appeals was to be reduced, while saving to litigants the option of producing new evidence in a court, by retaining the equity procedure.[22]

Finally, the Act of March 2, 1929 [23] transferred from the Court of Appeals of the District to the Court of Customs and Patent Appeals jurisdiction of appeals from the Patent Office, but *ex industria* provided "Nothing contained in this Act shall be construed as affecting in any way the jurisdiction of the Court of Appeals of the District of Columbia in equity cases." This was of course to make it plain that suits in the District Court of the District of Columbia should be appealable as are suits under R. S. 4915 instituted in district courts in circuits outside the District.

Thus it is clear that throughout more than a century Congress has for correction of erroneous adverse rulings, which if unreversed would end the proceedings in the Patent Office, preserved the remedy by bill in a District Court

---

[21] H. R. No. 1889, pp. 2–3; S. R. No. 1313, p. 4, 69th Cong., 2d Sess.

[22] See H. R. 1889, *supra,* p. 3; Hearings, House Committee on Patents, on H. R. 6552 and H. R. 7087, 69th Cong., 1st Sess., pp. 21–22; Hearings, House Committee on Patents, on H. R. 7563 and H. R. 13487, 69th Cong., 2d Sess., p. 11; Hearings, Senate Committee on Patents, on S. 4812, 69th Cong., 2d Sess., p. 15; Hearings, House Committee on the Judiciary, on H. R. 6687, 70th Cong., 1st Sess., *passim;* cf. Hearings, House Committee on Patents, on H. R. 7563 and H. R. 13487, 69th Cong., 2d Sess., p. 31; Hearings, House Committee on Patents, on H. R. 6252 and H. R. 7087, 69th Cong., 1st Sess., p. 79.

[23] 45 Stat. 1475.

either as additional to or alternative to that by summary appeal and has made the effect of adjudication in equity the same as that of decision on appeal.

3. The Commissioner of Patents states that "when claims are finally rejected by the examiner and his action is affirmed by the Board of Appeals, the grounds then stated for such rejection, as well as any other grounds in support thereof, may be set up by this Office in answer to a subsequent suit by the applicant under Rev. Stat. 4915. If the adjudication by the court is favorable to the applicant, it is the practice of this Office to treat that judgment as conclusive with respect to any ground of rejection urged before the court in defense of the refusal to allow the claims in issue. In the usual case, following such adjudication, the application is allowed and, upon payment of the prescribed fee, the patent is issued. However, in rare instances where, after termination of the suit, a new reference is discovered which shows lack of patentability of the claims for a reason not considered by the court, this Office considers itself under a duty to reject the claims on the newly discovered ground, and to refuse a patent on those claims unless the applicant can overcome the new ground of rejection. Similarly, if another applicant or a patentee is claiming substantially the same subject matter as that held patentable in the Rev. Stat. 4915 suit and a question of priority arises, interference proceedings may be necessary under Rev. Stat. 4904 to determine which of the adverse claimants is the first inventor. . . . The foregoing is believed to have been the consistent practice of this Office for many years."

4. This court has repeatedly indicated a view of the meaning of R. S. 4915 which is inconsistent with the decision below,[24] although the exact question here presented

---

[24] *Gandy* v. *Marble,* 122 U. S. 432, 439; *In re Hien,* 166 U. S. 432, 439; *Frasch* v. *Moore,* 211 U. S. 1, 8–9; *American Steel Foundries* v. *Robertson,* 262 U. S. 209, 212–213; *United States ex rel. Baldwin Co.* v. *Robertson,* 265 U. S. 168, 180–181.

was not involved in the cases under adjudication. The lower federal courts have consistently construed the section as conferring jurisdiction in cases which are indistinguishable from that at bar.[25]  They have so held in cases where it affirmatively appeared that further proceedings in the Patent Office would be necessary following adjudication in favor of the applicant,[26] and where though it did not appear of record that further proceedings would be required in the Patent Office, it was evident that they might ensue adjudication, as where a patent was denied for want of invention.[27]  And, where an applicant has succeeded in a bill filed under R. S. 4915, the courts have not questioned the power of the Patent Office subsequently to disallow the claims for want of invention over a newly discovered reference to the prior art.[28]

The court below relied upon *Hill* v. *Wooster,* 132 U. S. 693, for its holding that a suit under R. S. 4915 cannot select a single issue which affects the applicant's right to a patent, without determining all the other issues on which that right depends.  That case was one in which the Commissioner had decided an interference between the claims of two applicants in favor of one of them, and ordered that a patent issue.  In an *inter partes* suit by the unsuccessful applicant against the successful one, this

[25] *Dilg* v. *Moore,* 34 App. D. C. 106; *E. I. du Pont de Nemours & Co.* v. *Coe,* 89 F. 2d 679; *Pitman* v. *Coe,* 68 F. 2d 412; *Power Patents Co.* v. *Coe,* 110 F. 2d 550; *Tully* v. *Robertson,* 19 F. 2d 954; *Monopower Corp.* v. *Coe,* 33 F. Supp. 934; *Booth Fisheries Corp.* v. *Coe,* 114 F. 2d 462; *Forward Process Co.* v. *Coe,* 116 F. 2d 946.

[26] *Pitman* v. *Coe, supra; International Cellucotton Co.* v. *Coe,* 85 F. 2d 869; *American Cyanamid Co.* v. *Coe,* 106 F. 2d 851.

[27] *American Steel & Wire Co.* v. *Coe,* 105 F. 2d 17; *Abercrombie* v. *Coe,* 119 F. 2d 458; *General Motors Corp.* v. *Coe,* 120 F. 2d 736; *Radtke Patents Corp.* v. *Coe,* 122 F. 2d 937; *Hydraulic Press Corp.* v. *Coe,* 124 F. 2d 521; *Minnesota Mining & Mfg. Co.* v. *Coe,* 125 F. 2d 198; *Poulsen* v. *McDowell,* 142 F. 2d 267.

[28] *Gold* v. *Newton,* 254 F. 824.

court held that if it appeared that neither application disclosed invention (a matter which should have moved the Commissioner not to declare an interference) the bill should be dismissed.[29]   The court did not purport to decide what Patent Office rulings are reviewable under R. S. 4915.[30]

The ruling of the Board of Appeals in the instant case was neither a procedural ruling[31] nor an interlocutory one[32] as to which the District Court should not entertain a suit under R. S. 4915.   On the contrary, it finally denied a patent on the claims presented.   In this respect it was like a dismissal of a suit in a court.   Unless the applicant could sue to correct error in that dismissal, he could never sue under R. S. 4915.   That he was accorded a right of suit in this case the language of the statute, its history, the administrative construction and judicial decision unite in affirming.

The judgment is reversed and the cause remanded for further proceedings in conformity to this opinion.

*Reversed.*

---

[29] Section 16 of the Act of 1836, 5 Stat. 123, *supra,* expressly provided that upon a bill filed as a result of Patent Office decision on an interference the court might adjudge either of the patents void in whole or in part.   This language was evidently omitted in later acts as surplusage, for obviously if either patent was void for lack of invention or other cause, the question of interference disappeared.

[30] This is equally true of *Radtke Patents Corp.* v. *Coe,* 122 F. 2d 937, on which the court below relied.

[31] *Butterworth* v. *Hoe,* 112 U. S. 50; *Shoemaker* v. *Robertson,* 54 F. 2d 456; *Chessin* v. *Robertson,* 63 F. 2d 267; *Cherry-Burrell Corp.* v. *Coe,* 143 F. 2d 372.

[32] *American Cable Co.* v. *John A. Roebling's Sons Co.,* 65 F. 2d 801; *Synthetic Plastics Co.* v. *Ellis-Foster Co.,* 78 F. 2d 847.