**William H. McNEELY et al., Plaintiffs,**

v.

**COMMISSIONER OF PATENTS,
Defendant.**

**Civ. A. No. 835–68.**

United States District Court,
District of Columbia.

Nov. 9, 1971.

Elwood S. Kendrick, Kendrick & Sub-kow, Los Angeles, Cal., and Ellsworth H. Mosher, Stevens, Davis, Miller & Mosher, Arlington, Va., for plaintiffs.

S. William Cochran; Joseph F. Nakamura, Washington, D.C., for defendant.

*Memorandum*

McGuire, District Judge.

This action is brought under 35 U.S.C. § 145 in which plaintiffs seek an adjudication authorizing and directing the Commissioner of Patents to issue to plaintiffs a patent on their application Serial No. 569,023, entitled "Use of Xanthomonas Hydrophilic Colloid in Admixture with Bacterial Cells for a Well Drilling Fluid" which was filed on August 1, 1966, and is a continuation-in-part of Serial No. 11,994 filed March 1, 1960. Final rejection of Serial No. 569,023 was made by the Patent Office on February 7, 1968. All claims, 1 through 12, were rejected as unpatentable under 35 U.S.C. § 103. The sole reference relied upon by the Patent Office was Lindbloom, et al., Patent No. 3,198,268 filed on July 2, 1963, and issued August 3, 1965. Plaintiffs admit that their application is substantially a copy of the *Lindbloom* patent, but they contend that it is entitled to the earlier filing date of March 1, 1960, the filing date of Serial No. 11,994, their parent application.

The sole issue before the Patent Office and the Court *at the beginning of the trial* was whether or not this first application filed March 1, 1960, supports the claims of the later application, which plaintiffs claim is patentable. The Patent Office found that the earlier application did not support the later application and thus was not entitled to the earlier filing date of March 1, 1960. Therefore, since plaintiffs have copied *Lindbloom* in order to precipitate an interference, the findings by the Patent Office that plaintiffs' earlier application did not support the claims in their later application made it almost a formality for that tribunal to conclude plaintiffs' application obvious over that of *Lindbloom.*

It concluded that the parent application does not teach the use of a mixture of Xanthomonas Colloid with *bacterial cells* in a drilling fluid, which is the es-

sence of the present controversy. This conclusion was based on an interpretation of plaintiffs' parent application which reads as follows:

"The resulting Xanthomonas campestris colloidal material which I have found to be suitable for our purpose can be recovered and sterilized by precipitation in methanol of the *clarified* mixture from the fermentation." [Italics supplied] P.7, lines 21–24.

The Patent Office found the only reasonable interpretation of this language by one of ordinary skill in the art to mean a mixture *substantially* free of *suspended matter including bacterial cell debris.* (Board of Appeals Opinion, p. 2 (February 7, 1968)). However, plaintiffs contend that this interpretation is in error since one skilled in the art would realize that the bacterial cells are an inherent part of the colloid material and clarification thus can only mean the removal of *insoluble* materials and *not* the bacterial cells. (Transcript, p. 10).

At the trial, plaintiffs produced evidence of a persuasive nature to support their contention that the art of using a Xanthomonas Colloidal for a well drilling fluid would contain thousands of bacterial cells per gram of colloid mixture even after the so-called clarification process, and that clarification thus could only mean to one skilled in the art that the process would merely remove insoluble materials from the colloid mixture and not the bacterial cells.

Uncontested testimony by plaintiffs' expert witnesses leads the Court to this conclusion. The strength of such evidence does not require the Court to assume the presumption of correctness normally accorded Patent Office findings, especially in these *de novo* proceedings which permit the admission of new evidence by plaintiff not considered by the Patent Office. Stradar v. Watson, 100 U.S.App.D.C. 289, 244 F.2d 737, 739 (1957). The Court was impressed by this evidence, particularly that of plaintiffs' witnesses Finn and Starr (Transcript, pp. 128–139) and supporting exhibits including experimental data and photo-micrographs, and thus inclined to the view that the subject matter of the claims in plaintiffs' later or continuing application Serial No. 569,023, would appear to be supported by the specification of plaintiffs' earlier application, Serial No. 11,994. It would follow, therefore, that the plaintiffs' application should be accorded the filing date of March 1, 1960.

However, the Court at this juncture is unprepared to conclude that plaintiffs should be granted a patent because of defendant's motion to amend its answer to the complaint—*this at the end of trial*—to include two further references directed at obviousness under 35 U.S.C. § 103.

This motion to amend the Court grants, as such motions must be construed liberally. Yet nevertheless, coming as it did in this case at the end of the trial, such amendments pose real questions as to their basic fairness as well as practical problems which they give rise to in the orderly and speedy administration of justice. The Court, however, is not oblivious to the seemingly approved procedure of the Patent Office to reconsider patent applications in the light of new references not considered in the original Patent Office rejection as ground for continued review of the application even though the litigant has prevailed in a Section 145 suit before the Court. Hoover Co. v. Coe, 325 U.S. 79, 65 S.Ct. 955, 89 L.Ed. 1488 (1945); California Research Corp. v. Ladd, 123 U.S.App.D.C. 60, 356 F.2d 813, 818 (1966). Patent proceedings, although statutory in form, are equitable in substance and the Court in this situation adopts the suggestion made in *California Research* in the opinion of Judge Leventhal remanding the case back to the Patent Office, thus staying the proceedings here "in order to obtain the benefit of the Patent Office expertise in the light of the new condition developed on the record." Id. p. 818. So done.

This memorandum may be regarded as constituting an appropriate order in the circumstances.